UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION
_____

ANTHONY LAMONT MOORE,

               Plaintiff,

v.

PEGGY ERICKSON et al.,

               Defendants.

_____/

Case No. 2:20-cv-219

Honorable Robert J. Jonker

## OPINION

       This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. Under the Prison Litigation Reform Act, Pub. L. No. 104–134, 110 Stat. 1321 (1996) (PLRA), the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss, for failure to state a claim, Plaintiff's Eighth Amendment, equal protection, and conspiracy claims. In addition, the Court will deny Plaintiff's motion to amend the complaint (ECF No. 4) and grant Plaintiff's motion to withdraw (ECF No. 10) his motions for orders regarding fees (ECF Nos. 3, 6), which will themselves be denied as moot.

## Discussion

### I.    Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Muskegon Correctional Facility (MCF) in Muskegon, Muskegon County, Michigan.  The events about which he complains occurred while he was housed at the Marquette Branch Prison (MBP) in Marquette, Marquette County, Michigan.  Plaintiff sues MBP Assistant Resident Unit Supervisor Peggy Erickson, MBP Sergeant Unknown Rankin, and MBP Mental Health Case Worker Jane Doe.[1]

Plaintiff alleges that, in July 2017, he was transferred to MBP where he learned about a dog training program called PAWS.  (Compl., ECF No. 1, PageID.7.)  Plaintiff applied for admission to the program, but Defendant Erickson thwarted his effort in a variety of ways because Plaintiff frequently filed grievances and lawsuits.  (*Id.*, PageID.8.)

Plaintiff alleges that Defendant Erickson personally told him numerous times that she would not allow Plaintiff into the PAWS dog program or any other programs because he has filed so many lawsuits against MDOC staff.  (*Id.*, PageID.7–8.)  Plaintiff further alleges that another prisoner overheard Defendant Erickson tell Defendant Rankin that she was not going to allow Plaintiff into the PAWS program or any other program because of all the lawsuits he has filed.  (*Id.*, PageID. 8.)  When Plaintiff confronted Erickson about what she told Rankin and informed her that he intended to file a grievance against her, she had a correctional officer handcuff Plaintiff, she threatened to send him to the segregation unit, and she had another correctional officer search Plaintiff's cell, which left Plaintiff's property in disarray.  (*Id.*)  Plaintiff attempted

---

[1] In his complaint, Plaintiff also originally raised allegations about conduct that occurred at the Baraga Correctional Facility (AMF) in Baraga, Baraga County, Michigan, and named as a Defendant AMF Assistant Resident Unit Supervisor John Doe (Unknown Party #1).  The Court previously dismissed without prejudice Plaintiff's claims against Defendant John Doe on the ground of misjoinder.

to file a grievance against Defendant Erickson, but the MBP grievance coordinator refused to process it.  (*Id.*)  As a result, Plaintiff sent a complaint to the Legislative Ombudsman's Office and sent numerous letters to the MBP Warden.  (*Id.*)  Plaintiff also spoke to the Warden about Erickson's behavior, but the Warden told him that, if he stopped filing lawsuits against staff, then maybe he would be placed in a program.  (*Id.*, PageID.9.)

Plaintiff alleges that from October 23, 2017, to December 13, 2017, he filed numerous grievances and complaints against Erickson, and, in return, she repeatedly ordered correctional officers to search his cell, threatened to send him to segregation, and threatened to send him to AMF, far away from his family.  (*Id.*)  He also spoke to the Warden about Erickson's threats and the Warden told him if he did not want to be sent to AMF, he should stop filing grievances and complaints.  (*Id.*)

Sometime during the week of November 6, 2017, Defendant Rankin met with Plaintiff, purportedly to interview him for the PAWS program.  (*Id.*, PageID.11.)  After confirming that Plaintiff did not know him, Rankin tossed a stack of papers toward Plaintiff which were copies of grievances that Plaintiff had written from 2013 through 2014 while Plaintiff was housed at the LMF, which Rankin had reviewed.  (*Id.*)  Rankin told Plaintiff that neither he, nor Erickson allow into the PAWS program prisoners who file grievances and lawsuits against staff and Rankin informed Plaintiff that he would not be enrolled in the PAWS program.  (*Id.*)  Plaintiff told Rankin that he intended to file a grievance, to which Rankin responded, that Plaintiff would be "very sorry for saying that."  (*Id.*)  Rankin made a phone call, and by the time Plaintiff made it back to his cell, it "was tor[n] up and his property was scattered all over and his T.V. was turned upside down."  (*Id.*)  Plaintiff attempted to file a grievance, but the Grievance Coordinator refused to process it.  (*Id.*)  Several days later, when he was in the chow hall, Rankin ordered Plaintiff to put his tray

3

down and leave.  (*Id.*)  Again, Plaintiff tried to file a grievance, but the Grievance Coordinator would not process it. Then Plaintiff tried to talk with the Warden, and she just laughed.  (*Id.*, PageID.12.)  Plaintiff later learned that Rankin was upset that another prisoner revealed to Plaintiff the content of a conversation Erickson had with Rankin.  (*Id.*)  From November to December 2017, every time Rankin was in Plaintiff's dorm, Rankin ordered correctional officers to "trash" Plaintiff's property, telling them that, since Plaintiff likes "to file lawsuits and grievances on staff, I think he deserves a shake down."  (*Id.*)  Plaintiff tried to file grievances, but the Grievance Coordinator would not process them.  (*Id.*)

In December 2017, Defendant Erickson had the Plaintiff transferred to AMF because of the lawsuits, grievances, and complaints he filed.  (*Id.*)  In June 2018, he was transferred back to MBP for a week for a trial in one of his lawsuits.  (*Id.*)  During that week, Erickson ordered correctional officers to search Plaintiff's cell, threatened to place Plaintiff in segregation and threatened to write the Parole Board to keep Plaintiff in prison, all because of Plaintiff's numerous grievances, complaints, and lawsuits.  (*Id.*)  Once again, the Grievance Coordinator refused to process Plaintiff's grievances.  (*Id.*)  After his trial, Plaintiff was transferred back to AMF.  (*Id.*)  In August or September 2018, Plaintiff was transferred to Cooper Street Correctional Facility (JCS) for another trial, and from JCS he was transferred back to AMF.  (*Id.*, PageID.10.)  While at JCS, Plaintiff was enrolled in a program like the one he attempted to enroll in while housed at MBP, in which Erickson refused to allow him to enroll.  (*Id.*)

Around July 2019, Plaintiff was transferred back to MBP for trial in two more of his cases.  (*Id.*)  While Plaintiff was there, Defendant Erickson showed him a letter she wrote, and ultimately sent, to the Parole Board.  (*Id.*)  In the letter, Erickson wrote that she did not believe Plaintiff had learned anything while incarcerated because he liked to file grievances and lawsuits

against staff.  (*Id.*)  Again, the grievance coordinator would not file his grievances, and Erickson ordered correctional officers to frequently search Plaintiff's cell, threated to send him to segregation and to write the Parole Board because of Plaintiff's grievances, complaints, and lawsuits.  (*Id.*)  When Plaintiff told Erickson that he was going to file a grievance against her, she threatened to issue a Class II misconduct ticket, which she did.  (*Id.*)  Plaintiff was interviewed by a Sergeant regarding the Class II misconduct.  (*Id.*)  At Plaintiff's request, the Sergeant reviewed the videotape from the date and time of the alleged misconduct incident and, after doing so, told Plaintiff "not to worry about the misconduct."  (*Id.*)  Plaintiff tried to file a grievance on this matter, but the Grievance Coordinator would not process it.  (*Id.*)  Plaintiff filed a "formal complaint . . . and mailed it to Lansing."  (*Id.*)

Prior to joining the PAWS program at MBP, all prisoners must interview with Defendant Jane Doe to determine their suitability for the program.  (*Id.*)  Defendants Erickson and Rankin arranged for Plaintiff to be interviewed by Jane Doe, but when he was in the interview, Jane Doe only asked him about the lawsuits he filed against staff and told Plaintiff that he would not be enrolled in the PAWS program because he filed so many lawsuits.  (*Id.*)  When Plaintiff told Jane Doe that he intended to file a grievance on her, she called Erickson, and after speaking with Erickson, told Plaintiff that he would see what happens to prisoner who like to file grievances on staff.  (*Id.*)  When Plaintiff got back to his cell, he saw that his property was scattered on the floor.  (*Id.*, PageID.13.)  Plaintiff tried to file a grievance, but it was not processed.  (*Id.*)  When Plaintiff saw Jane Doe again, she started "teasing" him, saying that he "should [have] thought about the foreseeable consequences of filing lawsuits against staff, and the everlasting results that they have."  (*Id.*)  Jane Doe also told Plaintiff that he was never going to get into the PAWS program because of all the lawsuits and grievances he filed.  (*Id.*)

5

Plaintiff seeks money damages and a declaratory judgment.

## II.     Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "'to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'"  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).  While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions.  *Twombly*, 550 U.S. at 555; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").  The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Iqbal*, 556 U.S. at 679.  Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully."  *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 556).  "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief."  *Iqbal*, 556 U.S. at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(i)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law.  *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996).  Because § 1983 is a method for vindicating

federal rights, not a source of substantive rights itself, the first step in an action under § 1983 is to identify the specific constitutional right allegedly infringed.  *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

## III.      Retaliation

Retaliation based upon a prisoner's exercise of his or her constitutional rights violates the Constitution.  *See Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999) (en banc). In order to set forth a First Amendment retaliation claim, a plaintiff must establish that:  (1) he was engaged in protected conduct; (2) an adverse action was taken against him that would deter a person of ordinary firmness from engaging in that conduct; and (3) the adverse action was motivated, at least in part, by the protected conduct.  *Id.*  Moreover, a plaintiff must be able to prove that the exercise of the protected right was a substantial or motivating factor in the defendant's alleged retaliatory conduct.  *See Smith v. Campbell*, 250 F.3d 1032, 1037 (6th Cir. 2001) (citing *Mount Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274, 287 (1977)).

At this juncture, Plaintiff's retaliation claims against Defendants Erickson, Rankin, and Jane Doe are sufficient to survive screening.

## IV.      Eighth Amendment

Plaintiff alleges that frequent, malicious, and destructive cell searches ordered by Defendants Erickson, and Rankin and various other acts of harassment violated his Eighth Amendment rights.  Specifically, Plaintiff alleges that from October 23, 2017, to December 13, 2017, Erickson ordered correctional officers to search his cell, threatened to send him to segregation and threatened to send him to AMF, far away from his family.  For a week in June 2018 and again sometime in July 2019, when he was transferred back to MBP, Erickson ordered correctional officers to search Plaintiff's cell, threatened to place Plaintiff in segregation and

7

threatened to write the Parole Board, which she ultimately did, to keep Plaintiff in prison.  During the week of November 2017, Rankin ordered a malicious and destructive search of Plaintiff's cell and when Plaintiff was in the chow hall Rankin ordered him to put his tray down and leave immediately. From November to December 2017, every time Rankin was in Plaintiff's dorm Rankin ordered correctional officers to "trash" Plaintiff's property.

The Eighth Amendment imposes a constitutional limitation on the power of the states to punish those convicted of crimes.  Punishment may not be "barbarous" nor may it contravene society's "evolving standards of decency." *Rhodes v. Chapman*, 452 U.S. 337, 345–46 (1981).  The Amendment, therefore, prohibits conduct by prison officials that involves the "unnecessary and wanton infliction of pain." *Ivey v. Wilson*, 832 F.2d 950, 954 (6th Cir. 1987) (per curiam) (quoting *Rhodes*, 452 U.S. at 346).  The deprivation alleged must result in the denial of the "minimal civilized measure of life's necessities." *Rhodes*, 452 U.S. at 347; *see also Wilson v. Yaklich*, 148 F.3d 596, 600–01 (6th Cir. 1998).  The Eighth Amendment is only concerned with "deprivations of essential food, medical care, or sanitation" or "other conditions intolerable for prison confinement." *Rhodes*, 452 U.S. at 348 (citation omitted).  Moreover, "[n]ot every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey*, 832 F.2d at 954.

A single search of a prisoner's cell does not amount to an Eighth Amendment violation. *See, e.g., Tate v. Campbell,* 85 F. App'x 413, 417 (6th Cir. Dec. 15, 2003).  To establish a pattern of harassment sufficient to implicate the Eighth Amendment, a prisoner faces a high hurdle.  For example, in *Johnson v. Dellatifa,* 357 F.3d 539, 545 (6th Cir. 2004), Johnson alleged that the defendant continuously banged and kicked his cell door, repeatedly threw his food trays through the bottom slot of his cell door so hard that the top would fly off, made aggravating

remarks, made insulting remarks about Johnson's hair being too long, growled and snarled through Johnson's window, smeared his window to prevent Johnson from seeing out of it, behaved in a racially prejudicial manner toward Johnson and jerked and pulled him unnecessarily hard when escorting him from his cell.  *Id.*  Johnson also alleged that the defendant knew that he suffered from hypertension and intentionally harassed him to cause him to suffer a heart attack, stroke, or nervous breakdown.  *Id.*  Despite finding that Johnson's allegations, taken as true, described "shameful and utterly unprofessional behavior" by the defendant, the Sixth Circuit nevertheless rejected Johnson's argument that the defendant had violated his Eighth Amendment rights.  The Sixth Circuit concluded that "harassment and verbal abuse, such as Johnson has described, does not constitute the type of infliction of pain that the Eighth Amendment prohibits."  *Id.* at 546 (internal citations omitted).

If the detailed allegations set forth in *Johnson* were insufficient to state an Eighth Amendment claim, then the lesser vague, general, and conclusory allegations of destructive searches and other acts of harassment that Plaintiff alleges here, surely do not state such a claim. Although Plaintiff contends that numerous destructive searches were conducted and gives broad general dates on which they occurred, these searches occurred for brief periods over the course of three years (2017–2019) while Plaintiff was housed in different prisons.  Beyond these broad general time periods, Plaintiff does not offer any facts to demonstrate when the searches were conducted, how frequently his cell was searched, or what, if anything, was damaged or destroyed during the searches.  It is axiomatic that "not every unpleasant experience a prisoner might endure while incarcerated constitutes cruel and unusual punishment within the meaning of the Eighth Amendment." *Ivey,* 832 F.2d at 954.

Plaintiff's vague and conclusory allegations of harassment fall far short of the allegations in *Johnson* and fall far short of the threshold required to state an Eighth Amendment claim based on harassment.  Accordingly, Plaintiff has failed to state a claim for violation of his Eighth Amendment rights against any Defendant.

## V.      Equal Protection

Plaintiff alleges that Defendants Erickson, Rankin, and Jane Doe violated his right to equal protection and subjected him to "class of one" discrimination" by refusing to allow him to sign up for the PAWS program although other prisoners were permitted to sign up.  He contends that Defendants arbitrarily treated him differently than others similarly situated and that they had no rational basis for doing so.

The Equal Protection Clause of the Fourteenth Amendment provides that a state may not "deny to any person within its jurisdiction the equal protection of the laws," which is essentially a direction that all persons similarly situated should be treated alike.  U.S. Const., amend. XIV; *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice generally will not require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect class of individuals.  *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Plaintiff does not allege that a fundamental right is implicated in this case or that he is a member of a suspect class; he therefore is not entitled to strict scrutiny.  Instead, Plaintiff alleges that the Defendants' arbitrarily decided to deny him placement in the dog program and to increase his PREA score without a rational basis for the difference in treatment.

To prove an equal protection claim in a class-of-one case, Plaintiff must demonstrate "intentional and arbitrary discrimination" by the state; that is, he must demonstrate that he "has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment."  *Vill. of Willowbrook v. Olech*, 528 U.S. 562, 564

10

(2000); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011). "'[T]he hallmark of [a "class-of-one"] claim is not the allegation that one individual was singled out, but rather, the allegation of arbitrary or malicious treatment not based on membership in a disfavored class.'" *Davis v. Prison Health Servs.*, 679 F.3d 433, 441 (6th Cir. 2012) (quoting *Aldridge v. City of Memphis*, 404 F. App'x 29, 42 (6th Cir. 2010)); *see also Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580, 592 (9th Cir. 2008) ("The 'class of one' theory . . . is unusual because the plaintiff in a 'class of one' case does not allege that the defendants discriminate against a group with whom she shares characteristics, but rather that the defendants simply harbor animus against her in particular and therefore treated her arbitrarily.").

The threshold element of an equal protection claim is disparate treatment. *Scarbrough v. Morgan Cnty. Bd. of Educ.*, 470 F.3d 250, 260 (6th Cir. 2006); *Ctr. for Bio–Ethical Reform, Inc. v. Napolitano*, 648 F.3d 365, 379 (6th Cir. 2011) ("To state an equal protection claim, a plaintiff must adequately plead that the government treated the plaintiff 'disparately as compared to similarly situated persons and that such disparate treatment either burdens a fundamental right, targets a suspect class, or has no rational basis.'"). "'Similarly situated' is a term of art—a comparator . . . must be similar in 'all relevant respects.'" *Paterek v. Vill. of Armada*, 801 F.3d 630, 650 (6th Cir. 2015); *see also Nordlinger v. Hahn*, 505 U.S. 1, 10 (1992); *Tree of Life Christian Sch. v. City of Upper Arlington*, 905 F.3d 357, 368 (6th Cir. 2018) ("A plaintiff brining an equal protection claim must be 'similarly situated' to a comparator in 'all relevant respects.'"); *United States v. Green*, 654 F.3d 637, 651 (6th Cir. 2011).

Plaintiff makes only conclusory allegations that other unidentified prisoners who had worse records were allowed to participate in the dog program when he was not. Conclusory allegations of unconstitutional conduct without specific factual allegations fail to state a claim

11

under § 1983.  *See Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 555.  Plaintiff utterly fails to identify any similarly situated comparator; he states no facts to indicate that any individual prisoner was similar in all relevant respects.  *See Umani v. Mich. Dep't of Corr.*, 432 F. App'x 453, 460 (6th Cir. 2011) (holding that to be a similarly situated person, "the comparative [prisoner] 'must have dealt with the same [decisionmaker], have been subject to the same standards, and have engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or [the defendant's] treatment of them for it.'") (quoting *Ercegovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998)); *Project Reflect, Inc. v. Metro. Nashville Bd. of Pub. Educ.*, 947 F. Supp. 2d 868, 881 (M.D. Tenn. 2013) (holding that, to state a claim, a plaintiff must plead the existence of a similarly situated comparator); *Braun v. Ann Arbor Charter Twp.*, 519 F.3d 564, 575 (6th Cir. 2008) ("Although the plaintiffs claim that they have been treated differently from other individuals seeking rezoning, they fail to allege any specific examples of *similarly situated* individuals . . . ."); *Sanders v. City of Hodgenville*, 323 F. Supp. 3d 904, 911 (W.D. Ky. 2018) ("Sander's class-of-one claim fails as a matter of law . . . Sanders fails to identify any similarly situated individual who was treated differently.").  Because Plaintiff fails to allege facts demonstrating the existence of any prisoner who was similarly situated in all relevant respects, "the [c]omplaint does not contain sufficient factual matter to state a plausible claim." *Project Reflect, Inc. v. Metro. Nashville Bd. of Pub. Educ.*, 947 F. Supp. 2d at 881.

The Court therefore will dismiss Plaintiff's equal protection claim against Defendants Erickson, Rankin, and Jane Doe for failure to state a claim.

## VI.    Conspiracy

Plaintiff alleges that Defendants Erickson, Rankin and Jane Doe conspired to both retaliate against him for exercising his First Amendment rights and violate his Fourteenth

Amendment right to equal protection.  He also alleges that Erickson and Rankin conspired to violate his Eighth Amendment right to be free from cruel and unusual punishment.

The facts, to the extent that there are any, in support of these conspiracy allegations are scant and conclusory.  Plaintiff alleges that Rankin told him that neither Rankin nor Erickson would allow into the PAWS program prisoners who file grievances and lawsuits against staff. When Plaintiff told Jane Doe that he intended to file a grievance against her for refusing to enroll him in the PAWS program, Jane Doe called Erickson and told Plaintiff that he would see what happens to prisoners who file grievances on staff; when Plaintiff returned to his cell, his property was scattered on the floor.

A civil conspiracy under § 1983 is "an agreement between two or more persons to injure another by unlawful action."  *See Hensley v. Gassman*, 693 F.3d 681, 695 (6th Cir. 2012) (quoting *Hooks v. Hooks*, 771 F.2d 935, 943–44 (6th Cir. 1985)).  The plaintiff must show the existence of a single plan, that the alleged coconspirator shared in the general conspiratorial objective to deprive the plaintiff of a federal right, and that an overt action committed in furtherance of the conspiracy caused an injury to the plaintiff.  *Hensley*, 693 F.3d at 695; *Bazzi v. City of Dearborn*, 658 F.3d 598, 602 (6th Cir. 2011).  Moreover, a plaintiff must plead a conspiracy with particularity, as vague and conclusory allegations unsupported by material facts are insufficient.  *Twombly*, 550 U.S. at 565 (recognizing that allegations of conspiracy must be supported by allegations of fact that support a "plausible suggestion of conspiracy," not merely a "possible" one); *Fieger v. Cox*, 524 F.3d 770, 776 (6th Cir. 2008); *Spadafore v. Gardner*, 330 F.3d 849, 854 (6th Cir. 2003); *Gutierrez v. Lynch*, 826 F.2d 1534, 1538 (6th Cir. 1987).

As an initial matter, because Plaintiff fails to sufficiently state an Eighth Amendment claim for cruel and unusual punishment, he cannot state a claim against the Defendants for alleged conspiring to violate his rights under the Eighth Amendment.

Moreover, considering the allegations relative to Plaintiff's claims that Erickson, Rankin and Jane Doe conspired together to retaliate against him in violation of his First Amendment rights, Plaintiff's allegations are conclusory and speculative, at best. The allegations, even viewed in the light most favorable to Plaintiff, describe discrete events that occurred over a period of time. Plaintiff has set forth no facts establishing a link between the alleged conspirators or suggesting that there was any agreement between them. Although Plaintiff alleges that he was in the room when Jane Doe called Erickson, he makes no reference to the nature of their conversation. He merely jumps to the conclusion that, because he returned to an unkempt cell, Erickson and Jane Doe must have agreed not only that Plaintiff's cell should be searched, but also that they did so as part of a plan to deprive Plaintiff of his First Amendment rights. *See Siefert v. Hamilton Cnty. Bd. of Comm'rs*, 951 F.3d 753, 768 (6th Cir. 2020) (holding that a conspiracy claim fails when a plaintiff alleges facts showing that the defendants acted together but does not allege facts showing that the parties agreed to an objective to deprive the plaintiff of his civil rights).

Further, Plaintiff makes no allegation whatsoever to suggest how Erickson, Rankin and Jane Doe had agreed together to retaliate against him. As the Supreme Court has held, vague allegations, while hinting at a "possibility" of conspiracy, do not contain "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 556.

To the extent that Plaintiff intends to allege a claim for conspiracy under 42 U.S.C. § 1985(3),[2] that claim also fails.  To allege a claim for conspiracy under § 1985(3), a plaintiff must establish the following four elements: (1) a conspiracy involving two or more persons (2) for the purpose of depriving, directly or indirectly, a person or class of persons of the equal protection of the laws and (3) an act in furtherance of the conspiracy (4) which causes injury to a person or property, or a deprivation of any right or privilege of a citizen of the United States.  *See Collyer v. Darling*, 98 F.3d 211, 233 (6th Cir. 1996) (citing *Johnson v. Hills & Dales Gen. Hosp*., 40 F.3d 837, 839 (6th Cir. 1994)); *Smith v. Thornburg*, 136 F.3d 1070, 1078 (6th Cir. 1998).  The plaintiff further must demonstrate that the conspiracy was motivated by a class–based animus, such as race.  *Radvansky v. City of Olmsted Falls*, 395 F.3d 291, 314 (6th Cir. 2005); *Collyer*, 98 F.3d at 233; *Johnson*, 40 F.3d at 839; *Seguin v. City of Sterling Heights*, 968 F.2d 584, 590 (6th Cir. 1992).  Plaintiff has not alleged or established that he is a member of a discrete and insular minority accorded special protection under the Equal Protection Clause because of inherent personal characteristics.  *Seguin*, 968 F.2d at 590.  He also has not alleged that the Defendants actions were motivated by his membership in any such group.  Accordingly, Plaintiff fails to state a civil conspiracy claim under § 1985.[3]

---

[2] Subsections (1) and (2) of § 1985 do not apply.  Subsection (1) is inapplicable because Plaintiff does not allege a conspiracy to interfere with federal officers in the performance of their duties.  *See* 42 U.S.C. § 1985(1).  The first clause of subsection (2) is also inapplicable because Plaintiff does not allege that Defendants conspired to influence parties, witnesses, or jurors in federal court proceedings.  *See* 42 U.S.C. § 1985(2).  In addition, the second clause of subsection (2) is inapplicable because Plaintiff does not allege that Defendants conspired to "interfere with due process in state courts with the intent to deprive persons of their equal protection rights."  *Fox v. Mich. State Police Dep't*, 173 F. App'x 372, 376 (6th Cir. 2006).

[3] Under recent authority, Plaintiff's conspiracy claim appears to fail for an additional reason.  The intracorporate conspiracy doctrine states that "if all of the defendants are members of the same collective entity, there are not two separate 'people' to form a conspiracy."  *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Ed.*, 926 F.2d 505, 510 (6th Cir. 1991).  The Sixth Circuit repeatedly has applied the doctrine to claims under 42 U.S.C. § 1985(3).  *Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–40 (6th Cir. 1994) (quoting *Hull*, 926 F.2d at 510).  In *Jackson v. City of Cleveland*, 925 F.3d 793, 817–19 (6th Cir. 2019), the Sixth Circuit concluded that the intracorporate conspiracy doctrine applies to § 1983, as well as § 1985.  As a result, unless members of the same collective entity (such as the MDOC) are acting outside the scope of their employment, they are deemed to be one collective entity and

## VII.    Motion to Amend the Complaint

Plaintiff has filed a motion to supplement the complaint (ECF No. 4), in which he seeks four things:  (1) to add the MDOC as a Defendant; (2) to add an additional claim that Defendant Erickson violated prison policy, for which he seeks injunctive relief requiring Erickson to remove from his prison file information about his grievance filing and lawsuits because he is fearful about how the Parole Board will react when he goes before it; (3) to add a claim for injunctive relief against the MDOC to force it to remove from his prison file any information regarding his grievances and lawsuits; and (4) to add a claim for declaratory relief against the MDOC, holding that the PREA scoring system is unconstitutional and unfair.

Under Rule 15(d) of the Federal Rules of Civil Procedure, a party may seek and the court may permit supplemental pleadings "setting out any transaction, occurrence, or event that happened after the date of the pleading to be supplemented."  *Id.*  A motion to supplement a complaint under Fed. R. Civ. P. 15(d) is properly addressed to the discretion of the trial court. *Allen v. Reynolds*, No. 89–6124, 1990 WL 12182, at * 2 (6th Cir. Feb. 13, 1990) (citing *Otis Clapp & Sons, Inc. v. Filmore Vitamin Co.*, 754 F.2d 738, 743 (7th Cir. 1985)).  While leave to permit a supplemental pleading is favored, it cannot be used to introduce a separate, distinct, and new cause of action.  *Planned Parenthood of S. Cal. v. Neeley*, 130 F.3d 400, 402 (9th Cir. 1997).  Where a

---

not capable of conspiring.  *Jackson*, 925 F.3d at 819; *see also Novak v. City of Parma*, 932 F.3d 421, 436–37 (6th Cir. 2019) (same).

The "scope of employment" limitation "recognizes a distinction between collaborative acts done in pursuit of an employer's business and private acts done by persons who happen to work at the same place."  *Johnson*, 40 F.3d at 840.  "The mere 'fact that two or more agents participated in the decision or in the act itself will normally not' suffice to create a conspiracy."  *Id.* (quoting *Dombrowski v. Dowling*, 459 F.2d 190, 196 (7th Cir. 1972)).  In addition, "simply joining corporate officers as defendants in their individual capacities is not enough to make them persons separate from the corporation in legal contemplation."  *Harris v. Bd. of Educ.*, 798 F. Supp. 1331, 1346 (S.D. Ohio 1992). Instead, a plaintiff must allege that the defendants "acted other than in the normal course of their corporate duties." *Id.*  Here, all Defendants are members of the same collective entity (the MDOC) who work at the same divisional location.  Plaintiff does not allege, much less show, that Defendants were acting outside the scope of their employment.

motion seeks to add entirely new claims that occurred before the original pleading, the motion is properly considered to be a motion to amend, not one to supplement.  *Michael v. Ghee*, 498 F.3d 372, 386 (6th Cir. 2007); *see also United States v. Hicks*, 283 F.3d 380, 385 (D.C. Cir. 2002) (within the meaning of Rule 15, supplements relate to events that have transpired *since* the date of the original pleading, while amendments typically rely on matters in place *prior to* the filing of the original pleading).

In light of Plaintiff's desire to add both a new Defendant and a new claim against Defendant Erickson, together with his requests for relief based solely on the facts that underlie his original complaint, the Court construes Plaintiff's motion as one seeking to amend the complaint under Federal Rule of Civil Procedure 15.  Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading once as a matter of course before a responsive pleading is served. No responsive pleading has been served in this action.  As a result, Plaintiff is entitled to file an amended complaint.  Plaintiff, however, has not provided an amended complaint for filing.  His motion therefore will denied.

In addition, the Court declines to allow Plaintiff the opportunity to file a proper amended complaint raising all of his claims against all of the Defendants he intends to sue, including those set forth in his motion to amend, because his new claims would not survive review under 28 U.S.C. §§ 1915(e)(2), 1915A and 42 U.S.C. § 1997e(c).  If a claim would be properly dismissed, amendment to add the claim would be futile.  *Thiokol Corp. v. Michigan Dep't of Treasury*, 987 F.2d 376, 383 (6th Cir. 1993).  For the reasons that follow, therefore, the Court will also deny Plaintiff's motion insofar as he seeks an opportunity to file an amended complaint.

A.     **Adding the MDOC as Defendant**

In his proposed amendment, Plaintiff seeks to add the MDOC as a Defendant, and he seeks declaratory and injunctive relief.  Plaintiff may not maintain a § 1983 action against the

MDOC.  Regardless of the form of relief requested, the states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute.  *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1993).  Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court.  *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986).  In numerous opinions, the Sixth Circuit has specifically held that the MDOC is absolutely immune from a § 1983 suit under the Eleventh Amendment.  *See, e.g., Harrison v. Michigan*, 722 F.3d 768, 771 (6th Cir. 2013); *Diaz v. Mich. Dep't of Corr.*, 703 F.3d 956, 962 (6th Cir. 2013); *McCoy v. Michigan*, 369 F. App'x 646, 653–54 (6th Cir. 2010).  In addition, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under § 1983 for money damages.  *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will v. Mich. Dep't of State Police*, 491 U.S. 58, 66 (1989)); *Harrison*, 722 F.3d at 771.  Therefore, Plaintiff's proposed claim and requests for relief against the MDOC are meritless, and amendment of the complaint to include the claims would be futile.

**B.**     **Adding allegations against Defendant Erickson**

Plaintiff alleges that Defendant Erickson violated MDOC policy when she added information about his grievances and lawsuits to his institutional file.  He contends that MDOC policy precludes including such information in his files.  Plaintiff also adds new claims for injunctive relief against Defendant Erickson.

The MDOC policy directive regarding the administrative grievance procedure provides as follows:

18

> Grievances shall not be placed in Counselor files, Record Office files, or Central Office files, or placed in the prisoner health record.  Grievances also shall not be referenced on any document placed in these files or the prisoner health record, except as necessary pursuant to Paragraph M.  Grievance documents and files shall be accessed only to investigate or respond to a pending grievance, to respond to a request under the Freedom of Information Act, to respond to a request from the Department of Attorney General or appropriate Central Office staff, for audits, for statistical reporting, or to the Warden or his/her supervisor.

MDOC Policy Directive 03.02.130, ¶ M (eff. Mar. 18, 2019).  The policy says nothing about lawsuits or references to lawsuits.

Defendant's alleged failure to comply with an administrative rule or policy does not itself rise to the level of a constitutional violation.  *Laney v. Farley*, 501 F.3d 577, 581 n.2 (6th Cir. 2007); *Brody v. City of Mason*, 250 F.3d 432, 437 (6th Cir. 2001); *Smith v. Freland*, 954 F.2d 343, 347–48 (6th Cir. 1992); *Barber v. City of Salem*, 953 F.2d 232, 240 (6th Cir. 1992); *McVeigh v. Bartlett*, No. 94–23347, 1995 WL 236687, at *1 (6th Cir. Apr. 21, 1995) (failure to follow policy directive does not rise to the level of a constitutional violation because policy directive does not create a protectible liberty interest).  Section 1983 is addressed to remedying violations of federal law, not state law.  *Lugar v. Edmondson Oil Co.*, 457 U.S. 922, 924 (1982); *Laney*, 501 F.3d at 580–81.

Moreover, recording an undisputed fact in an institutional file would not appear to be a constitutional violation.  Plaintiff suggests, however, that it might be construed as adverse action to support a retaliation claim.  But the adverseness inquiry is an objective one and does not depend on how a particular plaintiff reacted.  The relevant question is whether the defendants' conduct is "*capable* of deterring a person of ordinary firmness."  *Bell v. Johnson*, 308 F.3d 594, 606 (6th Cir. 2002) (emphasis in original).  Putting objectively true information in a file is unlikely

to deter a person from protected conduct.[4]   Additionally, Plaintiff makes clear that, "it is well known by prisoners throughout the MDOC that the [P]arole [B]oard *asks* prisoners about the lawsuits and grievances they ha[ve] filed while incarcerated" so having such documentation in his file would simply substantiate Plaintiff's honest response to the Parole Board.   (ECF No. 4, PageID.40 (emphasis added).)   Therefore, Plaintiff's proposed amendment fails to state a retaliation claim to support his request for injunctive relief.

In addition, the retaliation claims stated against Defendant Erickson in Plaintiff's initial complaint do not support his request for injunctive relief against her.   The Sixth Circuit has held that transfer to another prison facility generally moots a prisoner's injunctive and declaratory claims.  *Kensu v. Haigh*, 87 F.3d 172, 175 (6th Cir. 1996); *Mowatt v. Brown*, No. 89–1955, 1990 WL 59896 (6th Cir. May 9, 1990); *Tate v. Brown*, No. 89–1944, 1990 WL 58403 (6th Cir. May 3, 1990); *Howard v. Heffron*, No. 89–1195, 1989 WL 107732 (6th Cir. Sept. 20, 1989); *Williams v. Ellington*, 936 F.2d 881 (6th Cir. 1991).   Underlying the rule is the premise that injunctive relief is appropriate only where plaintiff can show a reasonable expectation or demonstrated probability that he is in "real and immediate" danger of sustaining "some direct injury," that is not "conjectural" or "hypothetical," as the result of the challenged official conduct.  *Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983).   Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again.  *See, e.g., Lyons*, 461 U.S. at 102; *Alvarez v. City of Chicago*, 649 F. Supp. 43 (N.D. Ill. 1986); *Bruscino v. Carlson*, 654 F. Supp. 609, 614, 618 (S.D. Ill. 1987), *aff'd*, 854 F.2d 162 (7th Cir. 1988); *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974).

---

[4] Plaintiff alleges that he fears the Parole Board will rely on that information to deny him parole.  If the Parole Board were to deny parole because Plaintiff filed grievances or lawsuits, the denial arguably could be considered an "adverse action" sufficient to support a retaliation claim, but the claim would lie against the Parole Board members, not against Defendant Erickson.

Because Plaintiff is no longer housed at MBP where Erickson works, Plaintiff's claim for injunctive relief against her is moot.  There would be no purpose to enjoining her from excluding Plaintiff from programs or ordering shakedowns of Plaintiff's cell when he is no longer housed at MBP.  Plaintiff does not allege any facts to suggest that he continues to be in danger of Erickson taking the adverse actions that support his properly stated retaliation claims.

As a result, Plaintiff's proposed amendment to add a new claim and a request for injunctive relief against Defendant Erickson would be meritless and therefore futile.

**VIII.   Motion to Withdraw**

Plaintiff has filed two motions regarding filing fees: (1) a motion directing the MDOC to pay the filing fee in this action (ECF No. 3); and (2) a motion asking the Court to transfer certain filing fees being collected in another action to pay the filing fee in this action (ECF No. 6). Plaintiff has also filed a motion to withdraw (ECF No. 10) both filing fee motions.  The Court will grant Plaintiff's motion to withdraw (ECF No. 10) and will deny as moot Plaintiff's motions directing the MDOC to pay the filing fee (ECF No. 3) and to transfer the filing fee being collected in another case to this case (ECF No. 6).

### Conclusion

Having conducted the review required by the Prison Litigation Reform Act, the Court will dismiss, for failure to state a claim, the following claims against Defendants: (1) Plaintiff's claim for violation of his Eighth Amendment rights; (2) Plaintiff's equal protection claim; and (3) Plaintiff's claim for conspiracy.  The Court also will deny Plaintiff's motion to supplement his complaint (ECF No. 4), construed as a motion to amend, because it seeks to add the MDOC, which is immune from suit, and to add new claims and requests for relief from Defendant Erickson, which fail to state a claim.  In addition, the Court will grant Plaintiff's motion to withdraw (ECF No. 10) his motions for orders regarding fees (ECF Nos. 3, 6), which will

themselves be denied as moot.  Plaintiff's retaliation claim under the First Amendment remains in the case.

   An order consistent with this opinion will be entered.


Dated:   January 29, 2021      /s/ Robert J. Jonker
                 ROBERT J. JONKER
                 CHIEF UNITED STATES DISTRICT JUDGE