UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

| | |
|---|---|
| ANTHONY LAMONT MOORE #255379, | Case No. 2:20-cv-00219 |
| Plaintiff, | Hon. Robert J. Jonker<br>Chief U.S. District Judge |
| v. | |
| PEGGY ERICKSON, et al., | |
| Defendants. | |
| _____/ | |

## REPORT AND RECOMMENDATION

### I. Introduction

This Report and Recommendation (R&R) addresses Defendants' motion for summary judgment. (ECF No. 27.)

State Prisoner Anthony Lamont Moore filed a verified complaint pursuant to 42 U.S.C. § 1983. Moore's remaining claims relate to events at Marquette Branch Prison (MBP). Defendants are Assistant Resident Unit Supervisor (ARUS) Erickson, Sergeant Rankin, and Mental Health Case Worker VanOverloop. Moore accuses Defendants of retaliating against him, in violation of the First Amendment, while he was housed at MBP on three separate occasions: between July and December of 2017, then between June and September of 2018, and in July of 2019. Moore complains that he was not accepted into the dog training program, that his cell was searched, that he received several threats, and that he was harassed due to his lawsuits. The threats included a threat to transfer Moore back to the Baraga Max Correctional

Facility (AMF). And the facts before the Court indicate that after Moore was transferred downstate to attend a trial, he was transferred to AMF. Moore says that when he transferred back to MBP in July of 2019, to attend two trials in Marquette, the retaliatory acts continued.

Moore has presented evidence that creates a genuine issue of fact regarding whether he was prohibited from fully exhausting his administrative remedies prior to the filing of this complaint.

The undersigned respectfully recommends that the Court deny the motion for summary judgment because a genuine issue of material fact remains.

## II. Summary Judgment Standard

Summary judgment is appropriate when the record reveals that there are no genuine issues as to any material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Kocak v. Comty. Health Partners of Ohio, Inc.*, 400 F.3d 466, 468 (6th Cir. 2005). The standard for determining whether summary judgment is appropriate is "whether the evidence presents a sufficient disagreement to require submission to a jury[1] or whether it is so one-sided that one party must prevail as a matter of law." *State Farm Fire & Cas. Co. v. McGowan*, 421 F.3d 433, 436 (6th Cir. 2005) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251-52 (1986)). The court must consider all pleadings, depositions, affidavits, and admissions on file, and draw all justifiable inferences in favor of the party opposing

---

[1]  Disputed issues of fact regarding exhaustion under the PLRA may be decided in a bench trial and need not be submitted to a jury. *Lee v. Willey*, 789 F.3d 673, 678 (6th Cir. 2015).

the motion. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

### III. Exhaustion of Administrative Remedies

A prisoner's failure to exhaust his administrative remedies is an affirmative defense, which Defendants have the burden to plead and prove. *Jones v. Bock*, 549 U.S. 199, 212-16 (2007). "[W]here the moving party has the burden -- the plaintiff on a claim for relief or the defendant on an affirmative defense -- his showing must be sufficient for the court to hold that no reasonable trier of fact could find other than for the moving party." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986). The Sixth Circuit has repeatedly emphasized that the party with the burden of proof "must show the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Cockrel v. Shelby Cnty. Sch. Dist.*, 270 F.3d 1036, 1056 (6th Cir. 2001). Accordingly, summary judgment in favor of the party with the burden of persuasion "is inappropriate when the evidence is susceptible of different interpretations or inferences by the trier of fact." *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999).

Pursuant to the applicable portion of the Prison Litigation Reform Act (PLRA), 42 U.S.C. § 1997e(a), a prisoner bringing an action with respect to prison conditions under 42 U.S.C. § 1983 must exhaust his available administrative remedies. *Porter v. Nussle*, 534 U.S. 516, 532 (2002); *Booth v. Churner*, 532 U.S. 731, 733 (2001). A prisoner must first exhaust available administrative remedies, even if the prisoner may not be able to obtain the specific type of relief he seeks in the state administrative

3

process. *Porter*, 534 U.S. at 520; *Booth*, 532 U.S. at 741; *Knuckles El v. Toombs*, 215 F.3d 640, 642 (6th Cir. 2000); *Freeman v. Francis*, 196 F.3d 641, 643 (6th Cir. 1999). In order to properly exhaust administrative remedies, prisoners must complete the administrative review process in accordance with the deadlines and other applicable procedural rules. *Jones*, 549 U.S. at 218-19; *Woodford v. Ngo,* 548 U.S. 81, 90-91 (2006). "Compliance with prison grievance procedures, therefore, is all that is required by the PLRA to 'properly exhaust.'" *Jones*, 549 U.S. at 218-19. In rare circumstances, the grievance process will be considered unavailable where officers are unable or consistently unwilling to provide relief, where the exhaustion procedures may provide relief, but no ordinary prisoner can navigate it, or "where prison administrators thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Ross v. Blake*, 578 U.S. 632, 644 (2016).

"Beyond doubt, Congress enacted [Section] 1997e(a) to reduce the quantity and improve the quality of prisoner suits." *Porter*, 534 U.S. at 524. In the Court's view, this objective was achieved in three ways. First, the exhaustion requirement "afforded corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Id.* at 525. Second, "the internal review might 'filter out some frivolous claims.'" *Id.* (quoting *Booth*, 532 U.S. at 737*).* And third, "adjudication could be facilitated by an administrative record that clarifies the contours of the controversy." *Id.* When institutions are provided adequate notice as required under the PLRA, the opportunity to address the claims

4

internally furthers the additional goals of limiting judicial interference with prison administration. *Baker v. Vanderark*, 1:07-cv-004, 2007 WL 3244075, *5 (W.D. Mich., Nov. 1, 2007).

The most common procedure through which a prisoner in MDOC custody exhausts his administrative remedies is the grievance procedure set forth in Michigan Department of Corrections (MDOC) Policy Directive 03.02.130 (effective on July 9, 2007, superseded on March 18, 2019). According to the Policy Directive inmates must first attempt to resolve a problem orally within two business days of becoming aware of the grievable issue, unless prevented by circumstances beyond his or her control. *Id.* at ¶ P. If oral resolution is unsuccessful, the inmate may proceed to Step I of the grievance process and submit a completed grievance form within five business days of the attempted oral resolution. *Id.* at ¶¶ P, V. The inmate submits the grievance to a designated grievance coordinator, who assigns it to a respondent. *Id.* at ¶ V. The Policy Directive also provides the following directions for completing grievance forms: "The issues should be stated briefly but concisely. Information provided is to be limited to the facts involving the issue being grieved (i.e., who, what, when, where, why, how). Dates, times, places and names of all those involved in the issue being grieved are to be included." *Id.* at ¶ R (emphasis in original).

If the inmate is dissatisfied with the Step I response, or does not receive a timely response, he may appeal to Step II by obtaining an appeal form within ten business days of the response, or if no response was received, within ten days after the response was due. *Id.* at ¶¶ T, BB. The respondent at Step II is designated by

5

the policy, *e.g.,* the regional health administrator for medical care grievances. *Id.* at ¶ DD.

If the inmate is still dissatisfied with the Step II response, or does not receive a timely Step II response, he may appeal to Step III using the same appeal form. *Id.* at ¶¶ T, FF. The Step III form shall be sent within ten business days after receiving the Step II response, or if no Step II response was received, within ten business days after the date the Step II response was due. *Id.* at ¶¶ T, FF. The Grievance and Appeals Section is the respondent for Step III grievances on behalf of the MDOC director. *Id.* at ¶ GG.

"The total grievance process from the point of filing a Step I grievance to providing a Step III response shall generally be completed within 120 calendar days unless an extension has been approved." *Id.* at ¶ S.

In addition, the grievance policy provides that, where the grievance alleges conduct that falls under the jurisdiction of the Internal Affairs Division pursuant to Policy Directive 01.01.140, the prisoner may file his Step I grievance directly with the inspector of the institution in which the prisoner is housed, instead of with the grievance coordinator, as set forth in ¶ W of Policy Directive 03.02.130. *Id.* at ¶ R. In such instances, the grievance must be filed within the time limits prescribed for filing grievances at Step I. *Id.* Regardless of whether the grievance is filed with the grievance coordinator or the inspector, the grievance will be referred to the Internal Affairs Division for review and will be investigated in accordance with MDOC Policy

Directive 01.01.140. The prisoner will be promptly notified that if extension of time is needed to investigate the grievance. *Id.*

Where the grievance procedures are not available because the issue presented is non-grievable, exhaustion of prison grievance procedures is not required. It is well-established that a prisoner "cannot be required to exhaust administrative remedies regarding non-grievable issues." *Figel v. Bouchard*, 89 F. App'x 970, 971 (6th Cir. 2004); *Mays v. Kentucky Dept. of Corrections*, 2018 WL 4603153, at *3 (W.D. Ky. Sept. 25, 2018) ("It is beyond debate that an inmate cannot be required to exhaust administrative remedies regarding non-grievable issues."); *Reeves v. Hobbs*, 2013 WL 5462147 (W.D. Ark. Sept. 3, 2013) ("Defendants cannot treat a complaint as non-grievable, and therefore not subject to the grievance procedure, and then turn around and maintain the claim fails because [the plaintiff] failed to follow the grievance procedure. As the well known proverb states, they cannot have their cake and eat it too.").

When prison officials waive enforcement of these procedural rules and instead consider a non-exhausted claim on its merits, a prisoner's failure to comply with those rules will not bar that prisoner's subsequent federal lawsuit. *Reed-Bey v. Pramstaller*, 603 F.3d 322, 325 (6th Cir. 2010). The Sixth Circuit has explained:

> [A] prisoner ordinarily does not comply with MDOCPD 130—and therefore does not exhaust his administrative remedies under the PLRA—when he does not specify the names of each person from whom he seeks relief. *See Reed-Bey v. Pramstaller*, 603 F.3d 322, 324-25 (6th Cir. 2010) ("Requiring inmates to exhaust prison remedies in the manner the State provides—by, say, identifying *all* relevant defendants—not only furthers [the PLRA's] objectives, but it also prevents inmates from undermining these goals by intentionally

7

defaulting their claims at each step of the grievance process, prompting unnecessary and wasteful federal litigation process."). An exception to this rule is that prison officials waive any procedural irregularities in a grievance when they nonetheless address the grievance on the merits. *See id.* at 325. We have also explained that the purpose of the PLRA's exhaustion requirement "is to allow prison officials 'a fair opportunity' to address grievances on the merits to correct prison errors that can and should be corrected to create an administrative record for those disputes that eventually end up in court." *Id.* at 324.

*Mattox v. Edelman*, 851 F.3d 583, 590-91 (6th Cir. 2017).[2]

### IV. Analysis

Defendants argue that Moore failed to exhaust his administrative grievances on each of his retaliation claims by filing grievances through Step III of the grievance process. (ECF No. 28, PageID.151.) Defendants submitted Moore's MDOC Prisoner Step III Grievance Report to show that he was familiar with filing grievances and exhausting them through Step III of the grievance process, but that he failed to pursue grievances arising out his incarceration at MBP through Step III of the grievance process. (ECF No. 28-3.)

Moore argues that the grievance procedures were unavailable to him after the grievance coordinator failed to process his step I grievances. (ECF No. 29, PageID.192.) Moore says that the grievance coordinator refused to process his grievances because of his history of filing lawsuits. (*Id.*, PageID.193.) Moore argues that the Court should determine that a genuine issue of fact exists regarding whether

---

[2] In *Mattox*, the Sixth Circuit held that a prisoner may only exhaust a claim "where he notifies the relevant prison . . . staff" regarding the specific factual claim "giving the prison staff a fair chance to remedy a prisoner's complaints." *Id.* at 596. For example, grieving a doctor about his failure to give cardiac catheterization did not grieve the claim that the doctor erred by not prescribing Ranexa.

he exhausted his administrative remedies and deny Defendants' motion. (*Id.*, PageID.194.) Moore says that each time he complained that his grievances were not being processed, he was told by ARUS Erikson to resubmit his Step I grievances, but when he did, his grievances still went unprocessed. (*Id.*, PageID.199.) Moore says that he continued to make written complaints that his grievances went unprocessed to the grievance coordinator, the Warden, Internal Affairs, the Inspector's Office, the ACLU, MI-cure, and the Legislative Ombudsman Office. (*Id.*, PageID.201 (*see also*, letters Moore says he sent, which are dated 11-16-17, 12-3-17, 6-20-18, and 7-24-19, attached at ECF No. 30-1, PageID.208-211).)[3]

Defendants argue that Moore's claim that his grievances went unprocessed is conclusory. In addition, Defendants submitted an affidavit from MBP acting grievance coordinator Quentin Bolton, who attests that he processes all grievances by assigning each with a unique grievance number and logging them into a database. (ECF No. 32-2, PageID.220-221.) In addition, he says that he responds to written questions regarding the grievance process. (Id., PageID.221.) Finally, Bolton says that if Moore submitted a grievance or a kite – a written question – it would have been addressed in the same manner. (*Id.*) Bolton was not the acting grievance coordinator during the relevant time, so his affidavit has limited relevance for purposes of this motion.

---

[3] Moore says that he sent his Step I grievance goldenrod copies to the Ombudsman Office or to the Step III grievance administrator. (ECF No. 30, PageID.203.)

In the opinion of the undersigned, has presented conflicting accounts. Thus, a question of fact exists regarding whether Moore had access to the grievance system during his confinement at MBP.

## V. Recommendation

The undersigned respectfully recommends that this Court deny Defendants' motion for summary judgment because a genuine issue of material fact exists regarding the issue of exhaustion of administrative remedies. It is further recommended that the Court remand this issue so a bench trial can be conducted on the issue of whether Moore exhausted his administrative grievances before he filed this lawsuit.

Dated: December 16, 2021  /s/ *Maarten Vermaat*
MAARTEN VERMAAT
U. S. MAGISTRATE JUDGE

**NOTICE TO PARTIES**

Any objections to this Report and Recommendation must be filed and served within fourteen days of service of this notice on you. 28 U.S.C. § 636(b)(1)(C); FED. R. CIV. P. 72(b). All objections and responses to objections are governed by W.D. Mich. LCivR 72.3(b). Failure to file timely objections may constitute a waiver of any further right of appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *see Thomas v. Arn*, 474 U.S. 140 (1985).